FILED
CLERK
8/5/2013 10:19 am
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
RALPH NATALE, ROY KOHN, DAVID
PEREZ AND KIRK CONAWAY, AS
TRUSTEES OF HEALTH FUND 917 AND
THE LOCAL 917 PENSION FUND; HEALTH
FUND 917 and THE LOCAL 917 PENSION
FUND,

    MEMORANDUM OF
    DECISION AND ORDER
    10-CV-5596 (ADS)(ETB)

    Plaintiffs,

    -against-

CENTRAL PARKING SYSTEMS OF NEW
YORK. INC. and SONYA MITCHELL,

    Defendants.
----------------------------------------------------------X

**APPEARANCES:**

**Law Offices of Campbell & Associates**
*Attorneys for the Plaintiffs*
99 Tulip Ave.
Suite 404
Floral Park, NY 11001
  By: Susan M. Bruno, Esq., Of Counsel

**Certilman Balin Adler & Hyman, LLP**
*Attorneys for the Defendants*
90 Merrick Ave.
East Meadow, NY 11554
  By: Douglas E. Rowe, Esq., Of Counsel

**SPATT, District Judge.**

  On November 26, 2010, the Plaintiffs John Vacca, David Perez, Kirk Conway, and Roy Kohn as Trustees of the Health Fund 917 and the Local 917 Pension Fund and the Health Fund 917 and the Local 917 Pension Fund (collectively the "Plaintiffs") commenced this action against the Defendants Central Parking System of New York, Inc. ("Central") and John Doe

(collectively the "Defendants"). On April 18, 2012, the Court granted the Defendants' motion to amend the complaint and substitute Sonya Mitchell ("Mitchell") in place of John Doe.

Presently before the Court is the Defendants' Motion for Partial Summary Judgment pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56 to dismiss the damages claims on behalf of fourteen employees of Central. For the following reasons, the Defendant's Motion for Partial Summary Judgment is granted.

## I. BACKGROUND

Central is a New York company operating parking locations throughout New York. The Plaintiffs Ralph Natale, Kirk Conaway, Roy Cohn, and David Perez are trustees and fiduciaries of Health Fund 917 and the 917 Pension Fund (the "Funds"). The Funds were established pursuant to collective bargaining agreements ("CBAs") entered into between Local 917 of the International Brotherhood of Teamsters (the "Union") and various employers operating in the New York City Metropolitan area, including Central. The CBAs required these employers to make certain contributions to the Funds for covered employees.

Excluded from the CBAs are "[s]upervisory employees, including but not limited to managers, assistant managers, supervisors and assistant supervisors . . . with the authority to hire, promote, discipline, or otherwise effect changes in the status of employees or effectively recommend such action" ("Status Authority"). (Decl. of Douglas Rowe Ex. A ¶ 30.) Also, "[p]rofessional, clerical, maintenance, inventory, secretarial, security/guards [sic], and management employees are excluded from the [CBAs]." (Rowe Decl. Ex. A ¶¶ 30-31.)

In June 2010, the accounting firm of Steinberg, Steckler & Picciuro performed an audit of Central's payroll records, including contributions made to the Funds for the period of July 1,

2004 through December 31, 2004. The firm allegedly discovered $86,975.86 in unpaid health contributions and $17,590.08 in unpaid pension contributions on the part of Central.

On November 26, 2010, the Plaintiffs filed this complaint pursuant to sections 404, 406, 502, and 515 of the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. ("ERISA"), against Central and John Doe. The claims against Central were brought to compel contributions due to the Plaintiff Funds that were identified during the audit.

In addition, the Plaintiffs brought three separate causes of action only against the Defendant John Doe. In particular, the Complaint alleged that, "Doe was a person with discretion and/or authority to pay contribution[s] to the Health Fund 917 and the Local 917 Pension Fund on behalf of Central," and "Doe exercised authority and/or control over payment of contributions and monies due to the Fund from Central." (Compl. ¶¶ 31–32.) Therefore, the claims against Doe are premised in part on the allegation that Doe caused Central not to make the required contributions, thus breaching Doe's fiduciary duty under Section 404 of ERISA.

On October 28, 2011, the last day of discovery, the Plaintiffs deposed Sonya Mitchell, Central's payroll manager. According to the Plaintiffs, they learned at that time that Mitchell was the person (1) vested by Central with discretion and control over payment of the allegedly delinquent contributions and (2) who determined not to pay the amounts at issue in this case.

On April 18, 2012, the Court granted the Plaintiff's motion to amend the complaint and add Sonya Mitchell as a defendant in place of John Doe.

On March 16, 2013 the Defendants filed this motion for Partial Summary Judgment pursuant to Fed. R. Civ. P. 56 with regard to damages for twenty eight employees and also sought an order directing the Plaintiffs to furnish a newly revised auditor's findings. The Defendants maintained that the auditor's findings were flawed insofar as the audit included

3

twenty eight employees that were purportedly excluded from the CBAs. The Plaintiffs conceded that fourteen of the twenty eight disputed employees were incorrectly included.

Therefore, after the Defendants filed their Motion for Partial Summary Judgment, the Plaintiffs removed from the action their claims for damages for fourteen employees. The remaining fourteen employees (the "disputed employees") are Christine A. Joule, Manager; Koduah Mensah, Manager; Robert Gonzalez, Supervisor; Kwaku Boama, Manager; Robert Floreska, Manager/New York Supervisor; Suruj Persaud, Assistant Manager; Henry Amartey, Assistant Manager/New York Supervisor; Charles Pryor, Supervisor; Kenrick McPherson, Supervisor; Gabriel Alexis, Manager; Esmeralda Beaujuin, Assistant Manager/New York Supervisor; Mehari Haile, Assistant Manager; Victor Santana, Maintenance Supervisor; Dioncio Dominguez, Manager.

With respect to these fourteen disputed employees, the Plaintiffs insist that although Central has shown that they were managers, assistant managers, or supervisors, Central must also show that each and every one of them had Status Authority as well. Central contends that all of its managers, assistant managers, supervisors and assistant supervisors enjoy Status Authority by virtue of their position and that management employees are excluded from the CBAs regardless of Status Authority. In response, the Plaintiffs point to contributions made by Central on behalf of some managers, assistant managers, and supervisors as proof that not all managers and assistant managers are excluded. The Defendants assert that these contributions were made in error and do not bear on its position that all such employees have Status Authority and are thus excluded from the CBAs.

## II. DISCUSSION

### A. Legal Standard

"[S]ummary judgment is appropriate where there exists no genuine issue of material fact and based on the undisputed facts, the moving party is entitled to judgment as a matter of law." Salahuddin v. Goord, 467 F.3d 263, 272 (2d Cir. 2006) (quoting D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998)) (internal quotation marks omitted). "In deciding whether there is a genuine issue of material fact, [the Court] must interpret all ambiguities and draw all factual inferences in favor of the nonmoving party." Id. (citing Ford v. McGinnis, 352 F.3d 582, 587 (2d Cir. 2003).

In Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986), the Supreme Court explained that Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." Id. at 322. Accord Virgin Atl. Airways v. British Airways, 257 F.3d 256, 273 (2d Cir. 2001); Citizens Bank of Clearwater v. Hunt, 927 F.2d 707, 713 (2d Cir. 1991). Accordingly, "where . . . the nonmovant bears the burden of proof at trial, the movant may show prima facie entitlement to summary judgment . . . [by] point[ing] to evidence that negates its opponents claims." Salahuddin v. Goord, 467 F.3d 263, 273 (2d Cir. 2006).

In this regard, "[t]he non-movant must present more than a 'scintilla of evidence' or 'some metaphysical doubt as to the material facts,' and cannot rely on the allegations in his or her pleadings, conclusory statements, or on 'mere assertions that affidavits supporting the motion are not credible.'" Wojciechowski v. Boenig Bros., Inc., No. 09 CV 2579(DRH)(GRB), 2012 WL 912968, at *4 (E.D.N.Y. 2012) (quoting Del. & Hudson Ry. v. Consol. Rail Corp., 902 F.2d

5

174, 178 (2d Cir. 1990) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 250, 91 L. Ed. 2d 202 (1986) and Aslanidis v. U.S. Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993) and quoting and citing Gottlieb v. Cnty. of Orange, 84 F.3d 511, 518 (2d Cir. 1996)).

The non-movant must show that there is a genuine issue of material fact that a reasonable jury may find in its favor so that judgment as a matter of law would not be appropriate at trial. See Anderson, 477 U.S. at 251. "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." Ames v. Grp. Health Inc., 553 F. Supp. 2d 187, 191 (E.D.N.Y. 2008) (quoting Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1224 (2d Cir. 1994)) (internal quotation marks omitted).

**B. Burden of Proof**

The burden of proof in an ERISA action lies first with the Plaintiff Funds to "establish a prima facie case by demonstrating the inaccuracy of the employer's contributions." Local 282 Welfare Trust Fund v. A. Morrison Trucking, Inc., CV-92-2076(JMA), 1993 WL 120081, at *1 (E.D.N.Y. March 30, 1993) (Azrack, M.J.) (citing Brick Masons Pension Trust v. Indus. Fence & Supply, Inc., 839 F.2d 1333, 1338 (9th Cir. 1988); Combs v. Kings, 764 F.2d 818, 825 (11th Cir. 1985); LaBarbera v. R & S United Servs., Inc., No. 06-CV-2284(JG)(MDG), 2008 WL 2690275, at *3 (E.D.N.Y. July 1, 2008) (Gleeson, D.J.) (quoting Local 282 Welfare Trust Fund, 1993 WL 120081, at *1); Trs. of Local 807 Labor-Mgmt. Health & Pension Funds v. River Trucking & Rigging, Inc., No. CV-03-3569JMA, 2005 WL 2290579, at *5 (E.D.N.Y. Sep. 20, 2005) (citing Local 282 Welfare Trust Fund, 1993 WL 120081, at *1); Painters Dist. Council No. 30 Pension Fund v. W&P Ents., Inc., No. 89 C 1866, 1991 WL 28232, at *3 (N.D. Ill. Feb. 27, 1991). Thus,

in the present case, the Plaintiff Funds must show that each employee included in the audit was in fact an employee covered by the CBAs.

In the Court's view, the Defendants have shown *prima facie* entitlement to summary judgment by pointing to evidence that negates the Plaintiffs' claims with regard to the fourteen employees in question. The affidavit of Sonya Mitchell, coupled together with documentary evidence of the disputed employees' statuses for the relevant time period, indicate that those employees were supervisory employees with Status Authority and thus excluded from the CBAs. Therefore, the burden now lies with the Plaintiffs to show evidence upon which they may prevail at trial, namely that the disputed employees were not excluded from the bargaining agreement.

## C. The Plaintiffs' Prima Facie Case

The Plaintiffs maintain that they have made a *prima facie* case of delinquent contributions by pointing to 14 employees for whom no contributions were made. These 14 employees all had titles of Manager, Assistant Manager or Supervisor for the relevant time period and one of the employees was also a maintenance employee.

### 1. The Maintenance Supervisor

The Plaintiffs maintain that maintenance workers are not excluded from the CBAs unless they have Status Authority as well. The pertinent language in the CBAs reads: "Professional, clerical, maintenance, inventory, secretarial, security/guards [sic], and management employees are excluded from the bargaining unit." (Mitchell Dep. 30-31; Audit Report unnumbered pg 2.) The unambiguous contract language excludes all management employees regardless of Status Authority. See generally Druck Corp. v. The Macro Fund (U.S.) Ltd., No. 02 Civ 6164(RO), 2005 WL 665062, at *1 (S.D.N.Y. March 21, 2005) (citing Omni Quartz, Ltd. v. CVS Corp., 287 F.3d 61, 64 (2d Cir. 2002)) ("[I]n cases involving an unambiguous contract . . . the

contract's interpretation is a matter of law, not fact.") aff'd 290 F. App'x 441 (2d Cir. 2008). See also Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc., 232 F.3d 153, 158 (2d Cir. 2000) (quoting Sayers v. Rochester Tel. Corp. Supp. Mgmt. Pension Plan, 7 F.3d 1091, 1094 (2d Cir. 1993)) ("Contract language is ambiguous if it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the integrated agreement."). The Court therefore grants partial summary judgment to the Defendant with regard to the claims for unpaid contributions for Victor Santana, who held the title of Maintenance Supervisor during the relevant time period.

**2. The Managers, Assistant Managers and Supervisors**

Both parties agree that the CBAs only exclude managers, assistant managers, and supervisors with Status Authority. The Defendants maintain that all managers, assistant managers, and supervisors inherently possessed Status Authority and were therefore automatically excluded from the CBAs. The Plaintiffs insist that Status Authority must be shown separately for each and every manager, assistant manager, and supervisor that the Defendants seeks to exclude from the CBAs. In this regard, the Defendants offer the sworn deposition testimony of Sonya Mitchell stating that all of their managers, assistant managers and supervisors do in fact have Status Authority and therefore each and every manager, assistant manager and supervisor was excluded from the CBAs.

In response, the Plaintiffs submit three items to establish a *prima facie* case of delinquent contributions.

First, the Plaintiffs submit the auditor's report which indicates that the Defendants' owe contributions for these fourteen employees.

Second, the Plaintiffs contend that Sonya Mitchell's deposition testimony shows that only those managers with a "salaried management [position] code" necessarily had Status Authority. (See Mitchell Dep. Trans., at 59.)

Finally, the Plaintiffs emphasize that Central has in the past made contributions to the Funds for some managers. This fact, they contend, shows that not all managers, assistant managers, and supervisors have inherent Status Authority and are thus automatically excluded. Rather, they assert, the fact that Central made contributions in the past for some managers tends to show that not all managers have Status Authority. Therefore, contributions may in fact be owing for the fourteen subject employees.

It is certainly true that to exclude a manager, assistant manager, or supervisor, that employee must necessarily enjoy Status Authority under the CBAs which exclude "managers, assistant managers, supervisors and assistant supervisors . . . *with [Status Authority]*" (emphasis added). See generally Natwest USA Cedit Corp. v. Alco Standard Corp., 858 F. Supp. 401, 413 (S.D.N.Y. 1994) (citing U.S. Naval Institute v. Charter Comc'ns, Inc., 875 F.2d 1044, 1049 (2d Cir. 1989); Rothenberg v. Lincoln Farm Camp, Inc., 755 F.2d 1017, 1019 (2d Cir. 1985)) ("[A]n interpretation that gives a reasonable and effective meaning to all of a contract's terms is preferred to one that leaves a part unreasonable or of no effect.")

Nonetheless, the CBAs were contracts that covered extensive periods of time and were between the Union and various employers. Ideally, the Defendants would make a separate showing of Status Authority for each and every employee included in the audit that it maintains was excluded from the bargaining unit because of their supervisory authority. The Defendants do not even attempt to make such a showing for eleven of the fourteen disputed employees. Instead, the Defendants offer a sworn affidavit to the effect that during the relevant time period,

every employee at Central with the job title of Manager, Assistant Manager or Supervisor, had Status Authority. (Def.'s Rule 56.1 Am. Statement of Material Facts ¶ 26; Aff. of Sonya Mitchell ¶ 12.)

Further, Central insists that the contributions it made in the past for certain managers resulted from of a single mistake in its computerized payroll system and are irrelevant to the question of whether it is actually obligated to make contributions for any of its managers, assistant managers, or supervisors.

The Court will now address, in turn, whether the three allegations supported by evidence tendered by the Plaintiff establish a *prima facie* case allowing the Plaintiff to survive summary judgment. In sum, even construing all ambiguities and factual inferences in favor of the Plaintiff, the evidence at most suggests that the Defendants <u>may</u> have owed contributions. The Plaintiff fails to show that, even if its allegations were true, the Defendants <u>do</u> owe contributions for the fourteen disputed employees.

### a. The Audit Report

In some circumstances, the court may rely on an audit report. <u>See, e.g</u>, <u>Grabois v. Action Acoustics, Inc.</u>, No. 94 Civ. 7386 (NRB), 1995 WL 622127 at *5 n. 3 (S.D.N.Y. Nov. 9, 1995) ("Courts have found it appropriate to rely on an audit or an auditor's opinion to prove that defendant employers did not make required contributions to funds.").

In the present case, the audit does not establish that the Defendants were indeed required to contribute funds for the subject employees. It merely establishes that the employer did not make such contributions. The audit has in fact been modified during the course of motion practice to exclude employees originally included, that the Defendants showed, to the Plaintiff's satisfaction, should not have been included. This leads the Court to conclude that the audit's

inclusion of certain employees is not conclusory evidence that the Defendants owed contributions for those employees. The Defendants offer a sworn affidavit that no contributions were owed for any of the disputed employees because they were managers, assistant managers, or supervisors, all of whom had Status Authority and were thus excluded. The Plaintiffs must make a *prima facie* case that contributions were owing. An audit report that included various employees, some accurately, others admittedly inaccurately, without more does not prove that contributions were indeed owed for the disputed employees.

The case of Hanley v. Orient Beach Club, Inc., No. 96 CIV. 4478(AJP) (MGC), 1998 WL 65990 (S.D.N.Y. Feb. 18, 1998) is instructive. In Orient Beach, the plaintiff funds claimed damages under ERISA based on an audit which found that the defendant had failed to make contributions for certain employees. 1998 WL 65990, at *2. The Defendant employer maintained that those employees were excluded from the relevant CBA. Id. The plaintiff countered that the employees were not in fact excluded employees based on the dates they worked and other alleged facts. Id. at *3. The Court disagreed, finding that the plaintiff's failure to submit an audit report, along with an expert opinion affidavit from a witness knowledgeable about the audit's procedures and results, constituted a failure to make a *prima facie* case for damages under ERISA.

Similar to Orient Beach, the Plaintiffs in this case have not submitted an affidavit to support the assertions made in its audit report that the disputed employees were in fact included in the CBAs. Moreover, the Plaintiffs' conclusion that not all managers have Status Authority based on the fact that Central made contributions for some managers is unavailing because even if true, that fact fails to show that the disputed employees *did not* have Status Authority. At most, that fact shows that the disputed employees *may not* have had Status Authority. The Court

11

finds that the Plaintiffs fail to make a *prima facie* case that contributions *were* owing, or even that the Defendants' records *were* inaccurate.

Furthermore, the parties' discussion of burden-shifting in their briefs is irrelevant at this stage. Burden-shifting occurs in an ERISA trial after the Plaintiff makes a *prima facie* case showing that the employer's records are inaccurate. The burden is then shifted to the employer to produce evidence showing the precise amount of work performed by the employee. See <u>Local 282 Welfare Trust Fund</u>, 1993 WL 120081, at *1 ("Once the funds produce evidence that raises genuine questions about the accuracy of the employer's records and the number of hours actually worked, the burden shifts to the employer to come forward with evidence of the precise amount of work performed or evidence that the assumptions underlying the audit are incorrect." (internal citations and quotation marks omitted)).

Burden-shifting with regard to a summary judgment motion is a discussion appropriate when the Plaintiff moves for summary judgment claiming that the Defendant will not be able to meet its higher ERISA burden at trial, after the burden is shifted. See, e.g., <u>Local 282 Welfare Trust Fund</u>, 1993 WL 120081, at *1 (deciding Plaintiff's motion for summary judgment and explaining that after the Plaintiff's make a prima facie case at trial, the burden will be shifted to the employer because "ERISA imposes a duty on the employer to keep accurate records"). In the present case, it is the Defendant that has moved for summary judgment. Therefore, the relevant question is whether the Plaintiff will be able to make a *prima facie* case at trial. The audit alone would be insufficient to make a *prima facie* case for the Plaintiff of delinquent contributions for the subject employees.

12

The Court is also aware of a line of cases under the National Labor Relations Act that bear some similarity to the present case. The National Labor Relations Act, 29 U.S.C. § 151 et seq. ("NLRA" or the "Act") excludes supervisors from operation of the Act.

> The term "supervisor" means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing exercise is not of a merely routine or clerical nature but requires the use of independent judgment.

29 U.S.C. § 152(11). The Congressional purpose of excluding supervisors from the operation of the Act was to prevent "conflicts of interest as supervisors balanced their loyalties to the union with those to their employer." N.L.R.B. v. Winnebago Television Corp., 75 F.3d 1208, 1213-14 (7th Cir. 1996).

In connection with litigation over whether an employee is covered by the Act, the Supreme Court noted that "[w]hether a particular employee is a supervisor under the Act depends on his or her actual duties, not on his or her title or job classification." Int'l Longshoremen's Ass'n, AFL-CIO v. Davis, 476 U.S. 380, 396 n. 13, 106 S. Ct. 1904, 90 L. Ed. 2d 389 (1986). Nonetheless, the Court held that the plaintiff "must carry the burden of showing at least an arguable case" that a given employee is not a supervisor and falls under the jurisdiction of the Act. Id. Moreover, the requirement of an individualized review in the context of the NLRA is consistent with the Congressional purpose of protecting employees while maintaining "the integrity of a business's decision-making hierarchy." Winnebago Television, 75 F.3d at 1213.

In the present case, the Defendants' do not merely rely on a job title but present sworn testimony that each and every manager, assistant manager, and supervisor at their company

13

possesses Status Authority. In response, the Plaintiffs have failed to make even a colorable case that the disputed employees were not supervisors with Status Authority. As noted later, they have at most shown that these employees *may not* have had Status Authority. Such a presentation does not meet the burden of showing at least an arguable case that these employees *did not* have Status Authority and that the Plaintiff thus *is* entitled to relief. See Fed. R. Civ. P. 8(a) ("A pleading that states a claim for relief must . . . show[] that the pleader *is* entitled to relief." (emphasis added)). At best, the Plaintiffs at best established that the Defendants may have owed contributions, but this is insufficient to state a claim that the Plaintiffs, if their allegations are true, *are* entitled to relief.

### b. Mitchell's Deposition Testimony

The Plaintiff's reliance on Sonya Mitchell's deposition testimony to create doubt as to whether all fourteen of the disputed employees had Status Authority despite holding the title of manager, assistant manager, or supervisor is misguided. First, the Plaintiff's take Mitchell's deposition testimony out of context, extracting one line stating that only employees with salaried management position codes have Status Authority. This testimony was given in the context of Mitchell explaining her approach in determining that certain employees included in the audit were not included in the CBAs:

> Q    Did you object to findings for all managers?
> A    I objected to findings of any position that was not part of the collective bargaining agreement. We don't have a manager position that is part of the collective bargaining agreement. . . . If they're in a specific position code they would [automatically have Status Authority].
> Q    What position codes would that be?
> A    Salaried management codes. There are several different [salaried management] codes they might be in or at least some of the people that were in the [audit] findings were in [such salaried management position codes].

14

(Mitchell Dep., at 58–60.)

Mitchell was then asked about specific employees that she indicated were excluded based on their position codes. In response to each such employee, Mitchell indicated that they were excluded based on their salaried management position code. (Mitchell Dep. 60–62.) There is even reference made to a document upon which Mitchell set out her reasons for her objections regarding each and every manager, assistant manager, and supervisor included in the audit. (Mitchell Dep. 60.) The deposition testimony, taken as a whole, actually demonstrates that Mitchell made a determination for each and every disputed employee that their position code indicated that they possessed Status Authority during the relevant time period and were thus properly excluded from the CBAs. (Mitchell Dep. 60–62.)

Finally, Sonya Mitchell's sworn affidavit makes clear that each and every employee that she determined was excluded did in fact have Status Authority. (See Mitchell Aff. ¶¶ 12, 20.) Therefore, the Court finds that there is no genuine issue of fact arising out of Sonya Mitchell's testimony that each and every disputed employee had Status Authority during the relevant time period.

### c. Previous Contributions for Managers

The fact that Central previously made contributions to the funds for certain managers may go farther than the prior pieces of evidence in showing a disputed issue of material fact but still fails to create a *prima facie* case for the Plaintiffs. Mitchell averred that any contributions on behalf of managers was in error and does not prove any concession by Central that contributions are owed for some managers. (Mitchell Aff. ¶¶ 22–24.)

The Court finds that contributions are just as likely the result of a mistake in Central's payroll system, which handles over 3,000 employees as it is the result of a purposeful

15

contribution for managers determined not to have Status Authority. That allegation alone would not be sufficient to make the Plaintiffs' *prima facie* case at trial, thereby shifting the burden to the Defendant to produce evidence showing the amount of work performed. See Local 282 Welfare Trust Fund, 1993 WL 120081, at *1 (explaining that the Plaintiff must make a *prima facie* case before the burden is shifted to the employer). The evidence presented fails to show anything more than the fact the Defendant *might* owe contributions for the disputed employees. Therefore, no reasonable jury could find that the Defendant *does* owe contributions based on the evidence presented. See Anderson, 477 U.S. at 251-52 ("[T]he inquiry under [both the summary judgment and the reasonable jury directed verdict standard] is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it so one-sided that one party must prevail as a matter of law.").

As such, the Plaintiff's conclusory allegations that the Defendants previously purposely paid benefits to some employees that may have been managers are insufficient to defeat this motion for summary judgment. See Wojciechowski, 2012 WL 912968, at *4 ("The non-movant must present more than a scintilla of evidence or some metaphysical doubt as to the material facts, and cannot rely on . . . conclusory statements." (internal citations and quotation marks omitted)).

Put simply, the Plaintiff's evidence only shows that the disputed employees *may* have been included in the CBAs but fails to make even an arguable case that the disputed employees *were* included in the CBAs. Therefore, the Plaintiff fails to show disputed facts that, even if resolved in favor of the Plaintiff, would create a right to relief.

16

## III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED**, that the Defendant's Motion for Partial Summary Judgment is granted and the complaint is dismissed with prejudice with respect to Christine A. Joule; Koduah Mensah; Robert Gonzalez; Kwaku Boama; Robert Floreska; Suruj Persaud; Henry Amartey; Charles Pryor; Kenrick McPherson; Gabriel Alexis; Esmeralda Beaujuin; Mehari Haile; Victor Santana; and Dioncio Dominguez.

**SO ORDERED.**
Dated: Central Islip, New York
August 5, 2013

                                             */s/ Arthur D. Spatt*
                                             ARTHUR D. SPATT
                                             United States District Judge